**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

JOSEPH H. MARRAS, SR. and
MARRAS MUSIC CO., LLC,

    Plaintiffs,

v.

                                       Civil No. 07-12562
                                       Hon. Lawrence P. Zatkoff

CITY OF LIVONIA and
GERALD RAYCRAFT,

    Defendants.

_____/

**OPINION AND ORDER**

AT A SESSION of said Court, held in the United States Courthouse,
in the City of Port Huron, State of Michigan, on March 28, 2008

PRESENT: THE HONORABLE LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

## I. INTRODUCTION

This matter comes before the Court on Defendant City of Livonia's Motion for Partial Summary Judgment of First Amendment Claims [dkt 21]. The parties have fully briefed the Motion. The Court finds that the facts and legal arguments are adequately presented in the parties' papers such that the decision process would not be significantly aided by oral argument. Therefore, pursuant to E.D. Mich. L.R. 7.1(e)(2), it is hereby ORDERED that the Motion be resolved on the briefs submitted. For the reasons set forth below, Defendant's Motion is DENIED.

## II. BACKGROUND

**A. FACTUAL SUMMARY**

Plaintiff Joseph H. Marras ("Marras") owns Plaintiff Marras Music Company, LLC. On a

number of occasions over a span of approximately two years, Livonia Ordinance Enforcement Officer, Defendant Gerald Raycraft ("Raycraft"), informed Marras that he was in violation of Livonia's Zoning Ordinance that regulates sign postings and placements. These violations included the parking of a vehicle that advertised Marras's business in front of the store and the use of prohibited LED and Banner signs. In each of these instances, Marras complied with requests to eliminate or relocate the signs that were in violation of the Ordinance.

On December 19, 2006, Raycraft warned Marras that he was violating the City's Ordinance when his car, which displayed information regarding his business, was once again parked in front of the store. Marras had parked the car in front of the store temporarily to unload it. When he finished unloading his car, Marras moved it to the rear of the building. Later that day, Marras employed a man dressed as Santa Claus to hold a sign that read "Piano Sale" on one side and "Guitar Sale" on the other. Raycraft apparently informed Marras that this violated the "portable" sign prohibition of the Ordinance. Raycraft ticketed Marras for this activity when the latter refused to move the placard within the store. Several weeks later, a misdemeanor complaint was issued against Marras for his December 19 Ordinance violation. The complaint alleged not that Marras violated the portable sign prohibition but rather that he violated the restrictions pertaining to right-of-way access.

Michigan's 16th District Court dismissed the complaint with prejudice largely because the relevant right-of-way in front of Marras's workplace was defined vaguely as within the range of "100–120 feet." In the 16th District Court's view, such a range did not afford Marras adequate notice as to which areas were proscribed. After the dismissal of the suit at the state level, Plaintiffs filed their Complaint in this Court, alleging claims under 42 U.S.C. § 1983 for First Amendment,

due-process, and equal-protection violations. Plaintiffs also alleged malicious prosecution, but the Court declined jurisdiction over this claim on June 27, 2007. In a previous Opinion and Order, this Court dismissed Plaintiffs' substantive-due-process claim and granted Plaintiffs leave to amend their Complaint to satisfy the requirements for pleading a "class of one" equal-protection claim. In that Opinion and Order, the Court also dismissed all constitutional claims against Defendant Raycraft. As a result, only the City of Livonia remains as a defendant.

### B. THE ORDINANCE

Plaintiffs allege that the Ordinance violates the First Amendment both facially and as applied to them. Defendant City of Livonia now moves for partial summary judgment of Plaintiffs' First Amendment claims. Due to the nature of Plaintiffs' claims, an examination of the Ordinance is required.

The Ordinance at issue arose out of a six-year process of research and drafting. Those behind the ultimate version of the Ordinance examined similar ordinances in other communities and pursued the perspective of sign contractors. Several reports provide the backdrop for the Livonia Ordinance. In 2001, the Federal Highway Administration composed a report entitled, "Research Review of Potential Safety Effects of Electronic Billboards on Driver Attention and Distraction." The Report noted an increased crash rate following the installation of illuminated signs. The City of Minnetonka, Minnesota, published a similar report in which it validated the correlation between roadside advertising and accident rates. Defendant cites other similar reports as the backbone of the Ordinance.

> The stated purpose behind the City of Livonia Sign Ordinance at issue is to
>
>> make the City a more enjoyable and pleasing community and to create a more attractive economic and business climate by preserving

> property values . . . and to avoid the confusion of conflicting adjacent signs. . . . This consistent approach is necessary to remove the need for the type of signs which compete for the attention of the motorist, thereby creating traffic hazards as well as creating visual blight within the City.

Sec. 18.50. The Ordinance is extensive in scope, spanning thirty-three pages in which it sets forth requirements applicable to all signs. The Ordinance mandates that no sign oriented to motorized traffic may be erected without first being approved by the Director of the Inspection Department: "It shall be unlawful for any person to erect, alter, paint, relocate, or maintain (by structural change or changing the display of the face of the sign) within the City of Livonia any sign or other advertising structure . . . , except where specifically exempted . . . without first obtaining a permit." Sec. 18.50J. The Ordinance vests power in the Director to revoke or deny any sign permit if the sign violates the Ordinance or any other law; the Ordinance outlines an appeals process for such denials and revocations. Otherwise, permits will be granted provided that the proposed signs satisfy the requirements of the Ordinance and State Construction Code.

The Ordinance expressly prohibits, among other things, abandoned signs, billboards, flashing signs, projecting signs, portable signs, roof signs, trailer signs, pylon signs, outline tubing signs, moving signs, signs attached to trees or utility poles, unlawfully installed or maintained signs, obscene signs, and the parking of vehicles "so as to be visible from any adjoining street" if such vehicles have the effect of "providing advertisement of products or directing people to a business or activity located on the same or nearby property or any other premises." Sec. 18.50C. Conversely, the Ordinance expressly exempts certain signs from the permit requirement. Provided that they meet all other pertinent restrictions, public signs, flags, address numbers, nameplates, window signs, construction signs, directional signs, real estate signs, seasonal decorations, temporary community

event signs, real estate development signs, political signs, and required announcement signs may all be displayed without sign permits.

The Ordinance implements particular sign regulations for the various zoning districts of the City of Livonia. In residential districts, "no sign shall be erected, altered or used" except the following: nameplates; non-illuminated construction, real estate, and "open house" signs (limited to one for each property); one identification sign for each waiver use except for churches who shall be permitted one identification sign, one freestanding bulletin board, and one wall sign; and one advertising sign for each permitted non-residential use in particular districts. The residential-specific requirements set forth further limitations and requirements for subdivisions and multiple-family developments. Many, if not all, of these requirements contain size and duration limitations. The Ordinance has similar sections devoted to Office Services Districts, Professional Office Districts, and Industrial Districts.

### III. LEGAL STANDARD

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Thompson v. Ashe*, 250 F.3d 399, 405 (6th Cir. 2001). The moving party bears the initial burden of demonstrating the absence of any genuine issue of material fact, and all inferences should be made in favor of the nonmoving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

To support its motion, the moving party may show "that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. Although all inferences must be drawn in favor of the nonmoving party, this Court bears no obligation to imagine favorable facts where the

nonmoving party has alleged none. The moving party must also set forth facts sufficient to establish its case: "[T]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient [to defeat a motion for summary judgment]; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

## IV. ANALYSIS

In favor of its Motion for Partial Summary Judgment, Defendant responds that Plaintiffs' First Amendment claim amounts to an unwarranted attack on content-neutral time, place, and manner restrictions and should be accordingly dismissed. In support thereof, Defendant argues that the speech being regulated is commercial, the Ordinance advances a legitimate governmental interest and is narrowly tailored to that interest, and the Ordinance leaves open alternative channels of communication.

Plaintiffs respond that the Ordinance is not content-neutral, it does not advance the identified government interests of safety and aesthetics, and it is not sufficiently narrow in its scope. In support of their contentions, Plaintiffs argue that the Ordinance regulates commercial as well as non-commercial speech. Finally, Plaintiffs maintain that Defendants offer no evidence to support the Ordinance's validity against First Amendment scrutiny.

### A. STANDING

As a preliminary matter, the Court must determine whether Plaintiffs have standing to challenge the Ordinance both facially and as applied. Prudential standing rules are "somewhat relaxed in the First Amendment context." *King Enterprises, Inc. v. Thomas Twp.*, 215 F. Supp. 2d 891, 906 (E.D. Mich. 2002). In order to protect the "freedom of expression and the unfettered exchange of ideas," third parties may bring facial challenges in certain situations. *Id.* Third parties,

for example, may wage a facial challenge to an ordinance that has the effect of regulating speech based on content. *R.A.V. v. City of St. Paul*, 505 U.S. 377, 381 (1992). Because the Court is not convinced that the Ordinance is content neutral as discussed below, the Court cannot declare that Plaintiffs lack standing to bring a facial challenge against the Ordinance.

There does not seem to be any dispute about Plaintiffs' standing to challenge the Ordinance "as applied." Bringing "a cause of action in federal court requires that plaintiffs establish at an irreducible minimum an injury in fact; that is, there must be some 'threatened or actual injury resulting from the putatively illegal action.'" *Virginia v. Am. Booksellers Assoc.*, 484 U.S. 383, 392 (1988) (quoting *Warth v. Seldin*, 422 U.S. 490, 499 (1975)). Here, Plaintiffs received a citation for an alleged Ordinance violation. Although Plaintiffs successfully contested this citation in state court, they suffered injury by virtue of the fact that they had to expend time and money to contest the citation. Plaintiff Marras has also received numerous warnings and must park his personal vehicle in such a manner that it is not observed from adjoining streets. Accordingly, the Court finds that Plaintiffs have met the requirements for standing to challenge the Ordinance as applied.

B. **FIRST AMENDMENT**

The United States Constitution forbids the creation of any law "abridging the freedom of speech." U.S. Const. amend. I. This protection does not grant citizens absolute freedom to communicate their views at all times and in any manner they choose. *Midwest Media Prop., L.L.C. v. Symmes Twp.*, 503 F.3d 456, 474 (6th Cir. 2007). The government may thus impose reasonable restrictions on the time, place, and manner of protected speech, provided that the restrictions "are justified without reference to the content of the regulated speech, that they are narrowly tailored to serve a significant governmental interest, and that they leave open ample alternative channels for

communication of the information." *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989) (quoting *Clark v. Cmty for Creative Non-Violence*, 468 U.S. 288, 293 (1984)).

When evaluating a law governing speech, the Court must first make a threshold determination of whether the regulation at issue is content neutral or content based. *Richland Bookmart, Inc. v. Nichols*, 137 F.3d 435, 438 (6th Cir. 1998). In order to determine whether a restriction on free speech is content neutral, the Court looks to whether the government's regulation stems from a disagreement with the message being conveyed. *Ward*, 491 U.S. at 791. Put another way, regulations are content neutral if they can be "justified without reference to the content of the regulated speech." *Id.* The controlling consideration in such inquiries is the government purpose behind the restriction. *Id.*

Previously, the United States District Court for the Eastern District of Michigan has held that a sign ordinance is content based when "[e]xceptions to the permit requirements are . . . allowed entirely based on the content of the signs described in [the ordinance]." *King Enterprises, Inc.*, 215 F. Supp. 2d at 910. In *King Enterprises*, the court observed that exceptions to the ordinance's general prohibitions "are based on the types of signs (public signs, integral signs, private traffic direction signs, small signs, temporary land development signs, farm signs, and property address signs) which are categorized according to content." *Id.* at 911. Because the *King Enterprises* court determined that this sort of arrangement drew distinctions based on the "content of the message or the identity of the person or institution displaying the sign," it held the exception portions of the ordinance to be content based and subject to strict scrutiny. As with the ordinance in *King Enterprises*, the Ordinance at issue here includes explicit exceptions to its general prohibitions: "No signs oriented to motorized traffic on a public street (except as specifically exempted) shall be

erected, used, changed or altered without first having been approved by the Director of the Inspection Department, or his designee, and a sign permit issued." Sec. 18.50B(a). The section detailing "Permitted Signs" lists the signs exempt from the permit requirement "provided that the principal use to which they relate is permitted by Ordinance No. 543."[1] Sec. 18.50D. Included within the range of permitted signs are public signs, flags, window signs, construction signs, directional signs, real estate signs, seasonal decorations, temporary community event signs, real estate development signs, political signs, and required announcement signs. In light of these distinctions, the Court cannot say that these regulations are content neutral.[2]

Content-based regulations require the Court to determine whether the restrictions apply to commercial or non-commercial speech. Although commercial speech is more permissibly regulated by the government, *Bd. of Trustees of State Univ. of N.Y. v. Fox*, 492 U.S. 469, 477–78 (1989), "the protection provided to commercial speech is nonetheless considerable." *Pagan v. Fruchey*, 492 F.3d 766, 770 (6th Cir. 2007). Commercial speech encompasses "expression related solely to the economic interests of the speaker and its audience" and "speech proposing a commercial transaction." *Rubin v. Coors Brewing Co.*, 514 U.S. 476, 493 (1995). The regulations in the comprehensive Ordinance reach both commercial and non-commercial speech and accordingly, two different analyses must be conducted.

The strict-scrutiny test governs content-based restrictions on non-commercial speech. *Boos*

---

[1] The parties have not provided the Court with Ordinance No. 543.

[2] Defendant cites *Naser Jewelers, Inc. v. City of Concord*, 513 F.3d 27 (1st Cir. 2008), in support of its contention that the Ordinance is content neutral. That case, however, addressed the prohibition of all electronic messaging centers. That case differs from Defendant's Ordinance, which prohibits certain types of signs while permitting others.

*v. Barry*, 485 U.S. 312, 321–22 (1988). Defendant must "show that the regulation is necessary to serve a compelling state interest and that it is narrowly drawn to achieve that end." *Id.* Although restrictions on speech must serve and advance legitimate interests of the government, they "need not be the least restrictive or least intrusive means of doing so." *Ward*, 491 U.S. at 798. Rather, the restriction must be narrowly tailored to the legitimate goal, meaning that the "regulation promotes a substantial government interest that would be achieved less effectively absent the regulation." *Id.* at 799 (quotations omitted). Regulations must not "burden substantially more speech than is necessary to further the government's legitimate interests." *Fox*, 492 U.S. at 478.

Traffic safety and aesthetics have been held to be substantial government interests. *Members of City Council of City of L.A. v. Taxpayers for Vincent*, 466 U.S. 789, 807 (1984) ("The problem addressed by this ordinance—the visual assault on the citizens of Los Angeles presented by an accumulation of signs posted on public property—constitutes a significant substantive evil within the City's power to prohibit."). The courts have not held that traffic-safety and aesthetic agendas, however, rise to such a level as to justify content-based restrictions on non-commercial speech. *See N. Olmsted Chamber of Commerce v. City of N. Olmsted*, 86 F. Supp. 2d 755, 767 (N.D. Ohio 2000). Even if the Court determined these interests to be compelling, Defendant has not satisfied the Court that the Ordinance is narrowly tailored. Defendant's briefs and accompanying materials do not make it clear "why many of the City's distinctions are any safer or more aesthetically pleasing than the proscribed alternatives." *Id.* at 768.

Regulations of commercial speech are subject to a four-part test as delineated by the Supreme Court in *Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of N.Y.*, 447 U.S. 557 (1980). First, the commercial speech must concern lawful activities and not be misleading. *Id.* at

563–64. Next, the government must establish a substantial interest in support of the regulation. Third, the proposed restriction or regulation must directly and materially advance that governmental interest. On this point, the burden is to "demonstrate that the harms it recites are real and that its restriction will in fact alleviate them to a material degree." *Florida Bar v. Went for It, Inc.*, 515 U.S. 618, 625–26 (1995). Finally, the regulation must be narrowly tailored to achieve the desired result.

Plaintiffs and Defendant concede satisfaction of the first two prongs of the test. Determining whether summary judgment is appropriate in this matter hinges on the third and fourth prongs. Regarding the requirement that the regulation must directly and materially advance the government's interest, the Court finds that Defendant has not set forth sufficient justification as to how restricting certain signs while permitting others directly and materially advances its interests. Although Defendant cites numerous studies and reports, it does not explain the disparate treatment between different types of signs. And, as previously discussed, Defendant has not satisfied the Court that the Ordinance is narrowly tailored to achieve its goals.

## V. CONCLUSION

For the above reasons, Defendant City of Livonia has not met the standard for summary judgment. Accordingly, Defendant's Motion for Partial Summary Judgment is DENIED.

IT IS SO ORDERED.

s/Lawrence P. Zatkoff
LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

Dated: March 28, 2008

CERTIFICATE OF SERVICE

    The undersigned certifies that a copy of this Order was served upon the attorneys of record by electronic or U.S. mail on March 28, 2008.

                                                s/Marie E. Verlinde
                                                Case Manager
                                                (810) 984-3290