UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOSEPH H. MARRAS, SR. and
MARRAS MUSIC CO., LLC,

    Plaintiffs,

v.

Civil No. 07-12562
Hon. Lawrence P. Zatkoff

CITY OF LIVONIA and
GERALD RAYCRAFT,

    Defendants.

_____/

## OPINION AND ORDER

AT A SESSION of said Court, held in the United States Courthouse,
in the City of Port Huron, State of Michigan, on August 15, 2008

PRESENT: THE HONORABLE LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

## I. INTRODUCTION

This matter comes before the Court on Plaintiffs' motion for summary judgment of First Amendment claims [dkt 24]. The parties have fully briefed the motion. On March 28, 2008, this Court denied Defendant's motion for partial summary judgment [dkt 46], which addressed these same First Amendment claims. In the materials submitted to the Court for that motion, the parties set forth many of the same arguments now set forth in the present motion. The Court has since ordered additional briefing. In its supplemental brief, Plaintiffs wrongly characterize the Court's earlier ruling, stating that the Court ruled that: "(1) Plaintiffs have standing to challenge the Livonia sign ordinance . . . [and] (2) the Livonia sign ordinance is not content-neutral . . . ." In the March 28 opinion and order, however, the Court was deliberate in its ruling, stating only that it could not "declare that Plaintiffs lack standing to bring a facial challenge against the ordinance." Nor did the

Court's earlier decision articulate whether the ordinance was, in fact, content neutral. Instead, the Court opined that it was not convinced that the ordinance was content neutral and, not wanting to rule prematurely, the Court denied Defendant's motion. Having benefitted from the parties' additional briefing and a thorough review of the case law addressing similar ordinances, the Court finds that the facts and legal arguments are now adequately presented such that the decision process would not be significantly aided by oral argument. Therefore, pursuant to E.D. Mich. L.R. 7.1(e)(2), it is hereby ORDERED that the motion be resolved on the briefs submitted. For the reasons set forth below, Plaintiffs' motion for summary judgment of First Amendment claims is GRANTED in part and DENIED in part.

## II. BACKGROUND

### A. FACTUAL SUMMARY

Plaintiff Joseph H. Marras ("Marras") owns Plaintiff Marras Music Company, LLC. On a number of occasions over a span of approximately two years, Livonia ordinance enforcement officer, Defendant Gerald Raycraft ("Raycraft"), informed Marras that he was in violation of Livonia's zoning ordinance that regulates sign postings and placements. These violations included the parking of a vehicle that advertised Marras's business in front of the store and the use of signs prohibited by the ordinance. In each of these instances, Marras complied with requests to eliminate or relocate the signs that were in violation of the ordinance.

On December 19, 2006, Raycraft warned Marras that he was violating the city's ordinance when his car, which displayed information regarding his business, was once again parked in front of the store. Marras had parked the car in front of the store temporarily to unload it. When he finished unloading his car, Marras moved it to the rear of the building. Later that day, Marras

employed a man dressed as Santa Claus to hold a sign that read "Piano Sale" on one side and "Guitar Sale" on the other. Raycraft apparently informed Marras that this violated the "portable" sign prohibition of the ordinance. Raycraft ticketed Marras for this activity when the latter refused to move the placard within the store. Several weeks later, a misdemeanor complaint was issued against Marras for his December 19 ordinance violation. The complaint alleged not that Marras violated the portable sign prohibition but rather that he violated the restrictions pertaining to right-of-way access.

Michigan's 16th District Court dismissed the complaint with prejudice largely because the relevant right-of-way in front of Marras's workplace was defined vaguely as within the range of "100–120 feet." In the 16th District Court's view, such a range did not afford Marras adequate notice as to which areas were proscribed. After the dismissal of the suit at the state level, Plaintiffs filed their complaint in this Court, alleging claims under 42 U.S.C. § 1983 for First Amendment, due-process, and equal-protection violations. Plaintiffs also alleged malicious prosecution, but the Court declined jurisdiction over this claim on June 27, 2007. In a previous opinion and order, this Court dismissed Plaintiffs' substantive-due-process claim and granted Plaintiffs leave to amend their complaint to satisfy the requirements for pleading a "class of one" equal-protection claim. In that opinion and order, the Court also dismissed all constitutional claims against Defendant Raycraft. As a result, only the City of Livonia remains as a defendant.

### B. THE ORDINANCE

The ordinance at issue arose out of a six-year process of research and drafting. Those behind the ultimate version of the ordinance examined similar ordinances in other communities and pursued the perspective of sign contractors. The stated purposes behind Defendant's sign ordinance are to

3

maintain aesthetic quality and guard against traffic hazards that arise from an abundance of signs:

> It is . . . the intent of this ordinance . . . to make the City a more enjoyable and pleasing community and to create a more attractive economic and business climate by preserving property values . . . and to avoid the confusion of conflicting adjacent signs. . . . This consistent approach is necessary to remove the need for the type of signs which compete for the attention of the motorist, thereby creating traffic hazards as well as creating visual blight within the City.

Sec. 18.50. The ordinance is extensive in scope, spanning thirty-three pages in which it sets forth requirements governing sign use and restrictions.

As explained below, Plaintiffs only have standing to challenge certain portions of ordinance section 18.50C, which details signs that "are expressly prohibited in any zoning district." Specifically, the prohibited signs at issue in this matter are flashing signs, portable signs, and moving signs. Secs. 18.50C(3), (6), (11). Also before the Court is section 18.50C(19), which prohibits the parking of vehicles containing commercially-driven messages in any manner so that they would be visible from any adjoining road:

> The parking of a vehicle or trailer on public property or public right-of-way or on private property where such vehicle is parked or displayed so as to be visible from any adjoining street, if said vehicle or trailer has attached thereto or located thereon any sign or advertising device which has the effect of providing advertisement of products or directing people to a business or activity located on the same or nearby property or any other premises. This prohibition shall include the advertisement, display, or offering for sale of the vehicle upon which the sign is placed except when such vehicle is part of the inventory of a 'New and Used Car Lot' as permitted by Section 11.03 of Ordinance No. 543.

Sec. 18.50C(19). The last relevant section of the ordinance provides for severability such that, in the event that certain provisions are found unconstitutional, those provisions may be stricken from the ordinance without striking the ordinance in its entirety. Sec. 24.05.

## III.  LEGAL STANDARD

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Thompson v. Ashe*, 250 F.3d 399, 405 (6th Cir. 2001). The moving party bears the initial burden of demonstrating the absence of any genuine issue of material fact, and all inferences should be made in favor of the nonmoving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

To support its motion, the moving party may show "that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. Although all inferences must be drawn in favor of the nonmoving party, this Court bears no obligation to imagine favorable facts where the nonmoving party has alleged none. The moving party must also set forth facts sufficient to establish its case: "[T]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient [to defeat a motion for summary judgment]; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

## IV. ANALYSIS

Plaintiffs submit their motion for summary judgment of First Amendment claims, arguing that "[t]his Court must conclude the City of Livonia's sign ordinance is an unconstitutional restriction of speech because the City has not met its burden of proving its sign ordinance (1) actually and directly addresses traffic safety and aesthetics, and (2) is narrowly drawn . . . ." Plaintiffs further contend that the ordinance is impermissibly vague in its regulation of protected speech. Based on their arguments, Plaintiffs seek an order striking down section 18.50C "as an unconstitutional and impermissibly vague limitation on commercial and non-commercial speech"

5

and an order permanently enjoining the city from blanket bans on "'flashing signs,' 'portable signs,' 'moving signs,' and restrictions on vehicle parking." Lastly, Plaintiffs desire the Court to hold that "Plaintiffs' constitutional rights to free speech were, in fact, violated by the City's enforcement of its sign ordinance, § 18.50C."

Defendant contests Plaintiffs' standing to bring a facial challenge against the ordinance. Consonant with that argument, Defendant contends that Plaintiffs' claim is limited to ordinance section 18.50C, which Defendant maintains is content neutral. Defendant's remaining arguments generally reduce to a comprehensive defense of the ordinance and all of its provisions as constitutional. To the extent that the Court disagrees, Defendant observes that the ordinance contains a severability clause whereby any unconstitutional provisions may be stricken without disturbing the balance of the ordinance.

The Court must address two primary issues. First, the Court must consider whether Plaintiffs have standing to challenge the ordinance both as applied and facially. For the reasons set forth below, the Court finds that Plaintiffs have standing to challenge the sections of the ordinance, both facially and as applied, for which Plaintiffs have suffered an injury. Plaintiffs, however, lack standing to challenge the remaining ordinance provisions because they have not established an injury by virtue of the remaining sections. Second, the Court must determine whether the sign ordinance's prohibitions on flashing signs, portable signs, and moving signs, and the ordinance's restriction on the parking of vehicles containing commercial messages are constitutional.

A. STANDING

To bring suit in federal court, Plaintiffs must establish constitutional standing, showing that they have suffered an (1) injury in fact that is (2) "fairly traceable to the defendant's allegedly

unlawful conduct" and that is (3) "likely to be redressed by the requested relief." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). This threshold showing is considered the "irreducible constitutional minimum of standing." *Id.* Ignoring these requirements would be tantamount to converting "the judicial process into 'no more than a vehicle for the vindication of the value interests of the concerned bystanders.'" *Valley Forge Christian Coll. v. Ams. United for Separation of Church and State*, 454 U.S. 464, 473 (1982) (quoting *United States v. SCRAP*, 412 U.S. 669, 687 (1973)).

When the Court first addressed these First Amendment claims in the context of Defendant's motion for summary judgment, it declared, "Because the Court is not convinced that the ordinance is content neutral as discussed below, the Court cannot declare that Plaintiffs lack standing to bring a facial challenge against the ordinance." The Court's decision was based, in part, on a previous decision arising from the United States District Court for the Eastern District of Michigan in which the court held that ordinances differentiating between sign types are content-based and, in such circumstances, plaintiffs may establish standing to lodge facial challenges under "somewhat relaxed" prudential standing rules. *King Enterprises, Inc. v. Thomas Twp.*, 215 F. Supp. 2d 891, 906 (E.D. Mich. 2002). To date, *King Enterprises* has not been overruled, abrogated, or otherwise questioned. Due to similarities in the ordinances at issue in *King Enterprises* and the present case, the Court ordered supplemental briefing limited to the relevance and applicability of *King Enterprises*.

In its supplemental brief, Defendant observes that *King Enterprises* was decided without the benefit of the Sixth Circuit's guidance in *Prime Media, Inc. v. City of Brentwood*, 485 F.3d 343 (6th Cir. 2007). In *Prime Media*, the Sixth Circuit opined "that the injury in fact requirement still applies to overbreadth claims under the First Amendment." *Id.* at 350. Therefore, the Sixth Circuit held that

7

the plaintiff's "standing with regard to the size and height requirements does not magically carry over to allow it to litigate other independent provisions of the ordinance without a separate showing of actual injury under those provisions." *Id.*

The *Prime Media* court relied on and adopted an Eleventh Circuit decision, which held that "[a] plaintiff who has established constitutional injury under *a provision* of a statute as applied to his set of facts may also bring a facial challenge, under the overbreadth doctrine, to vindicate the rights of others not before the court under *that provision*." *CAMP Legal Defense Fund, Inc. v. City of Atlanta*, 451 F.3d 1257, 1271 (11th Cir. 2006) (as quoted in *Prime Media*, 485 F.3d at 350). The *Prime Media* court concurred with the Eleventh Circuit's approach requiring plaintiffs to "establish injury in fact as to each provision challenged, even under the overbreadth doctrine." *Prime Media*, 485 F.3d at 350. The *Prime Media* court then fashioned the approach into a critical inquiry: "whether the plaintiff can allege an injury arising from the specific rule being challenged, rather than an entirely separate rule that happens to appear in the same section of the municipal code." *Id.* at 351.

Defendant argues that *Prime Media* prevents Plaintiffs from bringing a facial challenge to sections of the ordinance that do not correspond to actual injuries. Plaintiffs partially concede this point in their supplemental analysis of *King Enterprises* in which they state that they are challenging "only those parts of the ordinance that directly impact the types of signs that can be used to advertise on the Marras Music property, and the parking of marked vehicles." Plaintiffs argue, however, that they "are entitled to bring their claims as both an as-applied challenge to the way the ordinance was enforced against them, and facially, to prevent *any enforcement of provisions applicable to them*." (emphasis supplied). This suggests a preemptive challenge to any ordinance provision that might

affect Plaintiffs. The Court finds Plaintiffs' approach untenable when considering the standards set forth in *Prime Media* and other recent First Amendment decisions. *See, e.g.*, *Granite State Outdoor Adver., Inc. v. City of Clearwater*, 351 F.3d 1112, 1116 (11th Cir. 2003) ("A plaintiff seeking to make an overbreadth challenge must first show that he has suffered an injury in fact, as required under Article III.").

Applying *Prime Media* to the facts of this case, the Court determines that Plaintiffs may challenge the ordinance provisions that have resulted in some concrete injury in fact. Thus, the Court rejects Plaintiffs' standing to prevent "any enforcement of provisions applicable to them" but finds that Plaintiffs have established standing to challenge the provisions for which Plaintiffs have suffered an actual injury rather than some hypothetical injury. Bringing "a cause of action in federal court requires that plaintiffs establish at an irreducible minimum an injury in fact; that is, there must be some 'threatened or actual injury resulting from the putatively illegal action.'" *Virginia v. Am. Booksellers Assoc.*, 484 U.S. 383, 392 (1988) (quoting *Warth v. Seldin*, 422 U.S. 490, 499 (1975)). Here, Plaintiffs received a citation for allegedly violating the ordinance's prohibition of portable signs. Although Plaintiffs successfully contested this citation in state court, they suffered injury by virtue of the fact that they had to expend time and money to contest the citation. Marras has also received warnings for various other violations, and he must park his personal vehicle in such a manner that it is not observed from adjoining streets because it contains information regarding his business. Based on the materials submitted in this case, the Court finds that Plaintiffs have standing to challenge the ordinance provisions relating to flashing signs, portable signs, and the provision governing the parking of a vehicle displaying advertising material. Consistent with First Amendment jurisprudence, Plaintiffs may challenge the constitutionality of these provisions both

facially and as applied.  *See, e.g.*, *Prime Media*, 485 F.3d at 350.

### B. FIRST AMENDMENT CLAIMS

The United States Constitution forbids the creation of any law "abridging the freedom of speech."  U.S. Const. amend. I.  This protection does not grant citizens absolute freedom to communicate their views at all times and in any manner they choose.  *Midwest Media Prop., L.L.C. v. Symmes Twp.*, 503 F.3d 456, 474 (6th Cir. 2007).  The government may thus impose reasonable restrictions on the time, place, and manner of protected speech, provided that the restrictions "are justified without reference to the content of the regulated speech, that they are narrowly tailored to serve a significant governmental interest, and that they leave open ample alternative channels for communication of the information."  *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989) (quoting *Clark v. Cmty. for Creative Non-Violence*, 468 U.S. 288, 293 (1984)).

#### *i. Content Neutrality*

When evaluating a law governing speech, the Court must make a threshold determination of whether the regulation at issue is content neutral or content based.  *Richland Bookmart, Inc. v. Nichols*, 137 F.3d 435, 438 (6th Cir. 1998).  In order to determine whether a restriction on free speech is content neutral, the Court looks to whether the government's regulation stems from a disagreement with the message being conveyed.  *Ward*, 491 U.S. at 791.  Put another way, regulations are content neutral if they can be "justified without reference to the content of the regulated speech."  *Id.*  The controlling consideration in such inquiries is the government purpose behind the restriction.  *Id.*

To discern whether the ordinance provisions at issue are content neutral or content based, the Court looks to the definitions section of the ordinance.  A "flashing sign" is "intermittently

illuminated or reflects light intermittently from either an artificial source or from the sun, or any sign which has movement of any illumination such as intermittent, flashing, or varying intensity, or in which the color is not constant, whether caused by artificial or natural sources." Sec. 18.50A(17). The prohibition on flashing signs is not a regulation on speech but on what form speech may take. The regulation does not indicate any disagreement with the message conveyed, and it applies to all potential users of flashing signs, regardless of content. As the Supreme Court has consistently held, "government regulation of expressive activity is 'content neutral' if it is justified without reference to the content of regulated speech." *Hill v. Colorado*, 530 U.S. 703, 719 (2000); *see also Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 47–48 (1986); *Clark*, 468 U.S. at 293. Accordingly, the prohibition on flashing signs is a content-neutral time, manner, and place regulation.

Under the ordinance, the prohibition on "moving signs" is also a content-neutral restriction. A sign falling under this category "has motion either constantly or at intervals, or . . . gives the impression of movement through intermittent flashing, scintillating, or varying the intensity of illumination whether or not said illumination is reflected from an artificial source or from the sun." Sec. 18.50A(25). The definition for "moving signs" explicitly excludes "banners, pennants, spinners, streamers or barber poles." *Id.* This restriction, like the prohibition on flashing signs, does not draw distinctions based on the message conveyed on the sign but rather the nature in which the sign is presented. Accordingly, and for the same reasons set forth with regard to flashing signs, the prohibition of moving signs is a content-neutral time, manner, and place regulation.

Plaintiffs' most immediate injury arose from what was allegedly a violation of the prohibition on "portable signs." The ordinance defines such signs as those that are

> freestanding, not permanently anchored or secured to either a
> building or the ground, including but not limited to 'A' frame signs,

11

> commonly called sandwich signs, 'T' frame signs or any other sign which by its description or nature may be, or is intended to be, moved from one location to another.

Sec. 18.50A(34). As with the two previous ordinance prohibitions, this regulation does not depend on the content of the sign but on the manner in which signs may be displayed. Accordingly, and for the same reasons set forth with regard to flashing signs, the prohibition on portable signs is a content-neutral time, manner, and place regulation.

Marras has also been warned for parking his vehicle in public view because it contains information relating to his business on its exterior. The section implicated by this activity forbids the parking of a vehicle containing advertising material virtually anywhere that would be visible from a public street:

> The parking of a vehicle or trailer on public property or public right-of-way or on private property where such vehicle is parked or displayed so as to be visible from any adjoining street, if said vehicle or trailer has attached thereto or located thereon any sign or advertising device which has the effect of providing advertisement of products or directing people to a business or activity located on the same or nearby property or any other premises. This prohibition shall include the advertisement, display or offering for sale of the vehicle upon which the sign is placed except when such vehicle is part of the inventory of a "New and Used Car Lot" as permitted by Section 11.03 of Ordinance No. 543.

Sec. 18.50C(19). Unlike the preceding three regulations, this regulation does draw a distinction between types of speech. Specifically, this provision applies to any vehicle that "has attached thereto or located thereon any sign or advertising device *which has the effect of providing advertisement of products or directing people to a business or activity* located on the same or nearby property or any other premises." (emphasis supplied). Vehicles containing non-commercially oriented bumper stickers or signs, on the other hand, are permitted to park anywhere. This

12

regulation is directed solely at commercial speech and depends on the commercially-oriented content.

### 2. *Content-Neutral Restrictions on Non-Commercial Speech*

Having determined the nature of the regulations at issue, the Court must examine whether the regulations withstand Plaintiffs' constitutional challenges. A content-neutral restriction on non-commercial speech is subject to intermediate scrutiny whereby it will be upheld so long as the regulation is "narrowly tailored to serve the government's legitimate, content-neutral interests but it need not be the least restrictive or least intrusive means of doing so." *Ward*, 491 U.S. 791 at 798. The narrowly-tailored requirement "is satisfied 'so long as the . . . regulation promotes a substantial government interest that would be achieved less effectively absent the regulation.'" *Id.* at 799 (quoting *United States v. Albertini*, 472 U.S. 675, 689 (1985)). Narrow tailoring is satisfied where the "guideline[s] leave open ample alternative channels of communication." *Id.* at 802.

Traffic safety and aesthetics have been held to be substantial government interests. *Members of City Council of City of L.A. v. Taxpayers for Vincent*, 466 U.S. 789, 807 (1984) ("The problem addressed by this ordinance—the visual assault on the citizens of Los Angeles presented by an accumulation of signs posted on public property—constitutes a significant substantive evil within the City's power to prohibit."). The courts have not held that traffic-safety and aesthetic agendas rise to such a level as to justify content-based restrictions on non-commercial speech. *See Whitton v. City of Gladstone*, 54 F.3d 1400, 1408 (8th Cir. 1995) ("[A] municipality's asserted interests in traffic safety and aesthetics, while significant, have never been held to be compelling."). In the present case, however, the prohibitions against flashing, moving, and portable signs are content-neutral regulations and therefore do not trigger the higher scrutiny that accompanies content-based

restrictions on non-commercial speech.

The ordinance, while restrictive, does not prohibit all types of signs. Business owners such as Marras have alternate means of promoting their businesses. The interests set forth by Defendant have been deemed substantial by the Supreme Court, especially in the context of content-neutral restrictions. It would be impossible to reconcile the substantial interests of aesthetics and traffic safety with a declaration that cities are without power to prohibit the time, manner, and place in which signs are appropriately displayed. Accordingly, the Court finds that Defendant's restrictions on flashing, moving, and portable signs are legitimate and constitutional time, manner, and place restrictions.

### iii. Restrictions on Commercial Speech

Although commercial speech is more permissibly regulated by the government, *Bd. of Trustees of State Univ. of N.Y. v. Fox*, 492 U.S. 469, 477–78 (1989), "the protection provided to commercial speech is nonetheless considerable," *Pagan v. Fruchey*, 492 F.3d 766, 770 (6th Cir. 2007). Commercial speech encompasses "expression related solely to the economic interests of the speaker and its audience" and "speech proposing a commercial transaction." *Rubin v. Coors Brewing Co.*, 514 U.S. 476, 493 (1995). Section 18.50C(19) curtails the use and placement of vehicles containing advertising material and restricts an individual's right to place a "For Sale" sign in his or her car window. Advertisements for businesses and "For Sale" signs encouraging commercial transactions relate to the economic interests of the speaker and accordingly constitute commercial speech.

Regulations of commercial speech are subject to a four-part test as delineated by the Supreme Court in *Central Hudson Gas & Electric Corp. v. Public Service Commission of New York*,

447 U.S. 557 (1980). First, the commercial speech must concern lawful activities and not be misleading. *Id.* at 563–64. Next, the government must establish a substantial interest in support of the regulation. *Id.* at 564. Plaintiffs and Defendant concede that these first two requirements have been satisfied.

The third prong of the *Central Hudson* test requires that the proposed restriction or regulation directly and materially advance the substantial governmental interest set forth in the second prong of the test. *Id.* On this point, the government's burden is to "demonstrate that the harms it recites are real and that its restriction will in fact alleviate them to a material degree." *Fla. Bar v. Went for It, Inc.*, 515 U.S. 618, 625–26 (1995). In support of its position, Defendant "must come forward with some quantum of evidence, beyond its own belief in the necessity of the regulation, that the harms it seeks to remedy are concrete and that its regulatory regime advances the stated goals." *Pagan*, 492 F.3d at 771 (citing *Edenfield v. Fane*, 507 U.S. 761, 770–72 (1993)).

Finally, the regulation must be narrowly tailored to achieve the government's desired result: "if the governmental interest could be served as well by a more limited restriction on commercial speech, the excessive restrictions cannot survive." *Cent. Hudson Gas & Elec. Corp.*, 447 U.S. at 564. The burden to establish a "reasonable fit" between the government's substantial interest and the ordinance provision rests with Defendant. *Cincinnati v. Discovery Network, Inc.*, 507 U.S. 410, 416 (1993); *see also Fox*, 492 U.S. at 480 (quoting *In re R. M. J.*, 455 U.S. 191, 203 (1982)) ("[Our decisions require] a fit that is not necessarily perfect, but reasonable; that represents not necessarily the single best disposition but one whose scope is "in proportion to the interest served."). In satisfying this last prong, Defendant must establish that it has "carefully calculated the costs and benefits associated with the burden on speech imposed" by the regulation. *Cincinnati*, 507 U.S. at

417.

The Court finds that Defendant has failed to satisfy the third prong of the *Central Hudson* test. The parties dispute the nature of the "quantum" of evidence that Defendant must set forth in defense of its Ordinance, focusing on the hazards posed by excessive signage as well as the existence of other ordinances with similar provisions. The Court need not address exactly what quantum of evidence is required because, regardless of the proof set forth, Defendant has not shown how its regulation on vehicles advances traffic safety and aesthetics or will alleviate these concerns in a direct and material way. Defendant only targets vehicles containing commercial speech, permitting vehicles containing distracting bumper stickers or any other non-commercial messages to be parked anywhere. It is unclear how an almost complete ban on the parking of potentially-distracting vehicles will alleviate traffic concerns in a direct and material way. *See Pagan*, 492 F.3d at 773. Section 18.50C(19) is not a "reasonable fit" with Defendant's legitimate interests in aesthetics and traffic safety.

Even if Defendant could demonstrate that the regulation directly and materially advances its interests in safety and aesthetics, it would fail the fourth prong of the *Central Hudson* test, which requires regulations to be narrowly tailored. Vehicles to which this provision applies may not be parked "on public property or public right-of-way or on private property where such vehicle is parked or displayed so as to be visible from any adjoining street." Sec. 18.50C(19). The provision is incredibly broad, preventing the parking of such vehicles "on the same or nearby property or *any other premises*." *Id.* (emphasis supplied). This effectively prevents such vehicles from being parked anywhere save garages or back alleys. The provision also interferes with individual citizens' rights to place "For Sale" signs in or on their vehicles unless the vehicles are situated on a used-car lot.

16

An individual wanting to sell his car, however, may place the "For Sale" sign in the window of his car and drive around Defendant's streets all day but once he parks, the sign must be removed.

The burden this regulation imposes on utility companies, pizza-delivery personnel, people trying to sell their cars, and other similarly-situated companies and individuals reveals the absurdity of this excessive provision. It does not directly or materially advance Defendant's interests in aesthetics and traffic safety. And, even if the regulation did directly and materially advance Defendant's interests, it is excessively broad in scope. Accordingly, the Court finds ordinance section 18.50C(19) to be an unconstitutional restriction on commercial speech.

### C. VAGUENESS

Plaintiffs also challenge the ordinance on vagueness grounds, alleging that the provisions at issue do not afford a person of ordinary intelligence notice as to what conduct is prohibited and "invite[] uneven enforcement that stifles free speech." In support of their argument, Plaintiffs offer that Marras faced a criminal prosecution for allegedly violating the portable sign prohibition—an indication to Plaintiffs that the ordinance invites disparate application. Defendant counters that the provisions are clear and disputes the propriety of Plaintiffs' uneven-enforcement given their existing equal-protection claim.

An ordinance may be vague in two different ways: "First, if it fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits. Second, if it authorizes or even encourages arbitrary and discriminatory enforcement." *Hill v. Colorado*, 530 U.S. 703, 732 (2000). Statutes are void for vagueness when they are so vague that "no standard of conduct is specified at all." *Chambers v. Stengel*, 256 F.3d 397, 400 (6th Cir. 2001) (quoting *Coates v. City of Cincinnati*, 402 U.S. 611, 614 (1971)). When criminal penalties are at stake, a "relatively

17

strict test is warranted." *Women's Med. Prof'l Corp. v. Voinovich*, 130 F.3d 187, 197 (6th Cir. 1997). Ordinances will not be found vague when they contain "narrow, objective, and definite standards to guide" government officials. *Am.-Arab Anti-Discrimination Comm. v. City of Dearborn*, 418 F.3d 600, 608 (6th Cir. 2005) (quoting *Shuttlesworth v. Birmingham*, 394 U.S. 147, 151 (1969)). When an ordinance contains examples, it tends to "alleviate[] vagueness problems." *Id.* at 609; *see also Hotel & Motel Ass'n of Oakland v. City of Oakland*, 344 F.3d 959, 973 (9th Cir. 2003).

Because the Court has already found the provision of the ordinance relating to vehicle parking to be unconstitutional, it need not revisit that provision in the void-for-vagueness context. Turning to the provisions governing portable, moving, and flashing signs, the Court finds that they adequately detail the signs that are prohibited. The provisions contain examples and definite standards by which Defendant's ordinance enforcement officers may conduct themselves. *See supra* Part IV(B)(i). The Court does not find Plaintiffs' argument that the ordinance invites uneven application compelling. The plain terms of the ordinance provisions afford "people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits." *Hill*, 530 U.S. at 732.

### D. SEVERABILITY

The parties agree that the ordinance contains a provision permitting the excision of unconstitutional provisions without disturbing the balance of the ordinance.

## V. CONCLUSION

IT IS HEREBY ORDERED that Plaintiffs' motion for summary judgment of First Amendment claims is GRANTED in part and DENIED in part.

IT IS FURTHER ORDERED that ordinance section 18.50C(19) be stricken from

18

Defendant's ordinance as an unconstitutional regulation of commercial speech.

IT IS FURTHER ORDERED that Plaintiffs' challenges to the remainder of the ordinance are DISMISSED.

IT IS SO ORDERED.

S/Lawrence P. Zatkoff
LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

Dated: August 15, 2008

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of this Order was served upon the attorneys of record by electronic or U.S. mail on August 15, 2008.

S/Marie E. Verlinde
Case Manager
(810) 984-3290